IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


STACEY RENEE BEASLEY                                                                 PLAINTIFF


VS.                                         CASE NO. 3:16CV00005 PSH


CAROLYN W. COLVIN, Acting Commissioner,
   Social Security Administration                                                    DEFENDANT


ORDER

Plaintiff Stacey Renee Beasley ("Beasley"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred by: (1) failing to adequately develop the record regarding her intellectual functioning; (2) incorrectly determining her residual functional capacity ("RFC"); and (3) posing inadequate hypothetical questions to the vocational expert. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on April 7, 2014. (Tr. 59-80). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Colvin's decision. 42 U.S.C. § 405(g).

*Administrative hearing:* At the outset of the administrative hearing, Armstrong testified she was 23 years old, with a ninth grade education which included special education reading classes. She stated she left school because of leg and back pain, and an inability to read with comprehension.

Beasley indicated she attempted and failed to obtain a GED.  She testified to being able to do basic math.  As for work history, she stated she worked some in 2008 and tried to get a job at a local gas station.  According to her testimony, she has a driver's license.  She takes thyroid medicine and cholesterol pills, and has no side effects.  Beasley conceded that she failed to properly take her medications in the past.  She was 5' 4" and weighed 392 pounds at the hearing.  She described very limited daily activities, being able to sit for up to 30 minutes, stand for up to 10 minutes, and needing to recline during most of the day.  She stated she would need to lay down every hour if she had a job.  (Tr. 63-73).

The ALJ posed a hypothetical question to the vocational expert, asking her to assume a worker of Beasley's age and educational level who could perform sedentary work but avoid work requiring her to climb ladders, ropes, or scaffolds, and avoid unprotected heights.  Further, the ALJ asked the vocational expert to assume the worker would have the ability to perform work in a setting where interpersonal contact would be incidental to the work performed, the complexity of one to two-step tasks is learned and performed by rote, with few variables, little judgment required, the supervision required is simple, direct, and concrete, and the reasoning level would not exceed one or two.  The vocational expert indicated such a worker could perform the jobs of assembler or inspector.  (Tr. 76-78).

Beasley amended her alleged onset date to July 3, 2008, so the pertinent inquiry is whether she was disabled between that date and November 6, 2014, when the ALJ issued his ruling.

*Medical records during the relevant period:* Beasley was seen by advanced practice nurse Debbie Wilhite ("Wilhite") in September 2008, complaining of diarrhea and vomiting, and requesting a pregnancy test.  Beasley reported not having taken her thyroid medicine "in several

months." (Tr. 330). Beasley returned to Wilhite for lab work in November 2008 and returned again in September 2009 complaining of heavy menstrual flow and cramps. Wilhite recorded Beasley had been "very non compliant with her Thyroid medication" and "continues to gain weight." (Tr. 324).

Later in September 2009 Beasley presented as a new patient to Dr. Lorna Layton ("Layton") at the NEA Baptist Women's Clinic. Beasley complained of a continuous heavy menstrual flow, and reported she had not been taking her thyroid medicine. Layton diagnosed a simple cyst, stressed the need for Beasley to take her prescribed medication, recommended she continue iron supplements, and planned to see if the cyst could be resolved with hormonal suppression rather than surgery. (Tr. 342-344).

In April 2012 Beasley was seen as a new patient by Dr. Kesha James ("James") at the East Arkansas Family Health Center. James assessed her with suicidal ideation, hypothyroidism, pica, anxiety/depression, and menorrhagia, and referred Beasley for intervention with an in-house counselor. Beasley reported she had not been on her thyroid meds "in over 2-3 years." (Tr. 369-370).

The day after seeing James, Beasley saw a social worker at Mid-South Health Systems, who estimated her intelligence to be borderline although her thought processes were logical, and diagnosed her with major depressive disorder, recurrent, nondependent alcohol and cannabis abuse, and obesity. The social worker found Beasley's GAF to be 35. (Tr. 356, 359).

In May 2012 Beasley was seen again by James, who diagnosed her with hypothyroidism, anxiety/depression, and hyperlipidemia. (Tr. 367-368).

A psychiatric evaluation was performed by Dr. Kelly Hair ("Hair") at Mid-South Health Systems in June 2012. Beasley reported to Hair that she left high school in the ninth grade because

she was being bullied about her obesity, and that she was in regular classes and making good grades. Hair diagnosed her with major depressive disorder and nondependent alcohol and cannabis use, and wrote that borderline intellectual functioning should be ruled out. (Tr. 348-350).

Beasley saw James on the same day she was evaluated by Hair. Beasley reported improvement after taking her thyroid and cholesterol medication, and James diagnosed her with hypothyroidism and morbid obesity. (Tr. 365-366).

A consultative physical examination was performed in July 2012 by Dr. Jeffrey Barber ("Barber"). Barber noted Beasley weighed 391 pounds, found her to have full range of motion of her extremities and cervical and lumbar spine, was unable to perform straight leg raises due to her size, and found she could squat/arise from a squatting position with difficulty. Barber diagnosed her with morbid obesity, hypothyroidism, and depression, noting she had "severe limitations in physical condition due to weight." (Tr. 376-380). An x-ray of Beasley's spine performed on the date of Barber's examination was normal. (Tr. 387).

Beasley, complaining of breathing problems, was seen by Dr. Holli Banks-Giles in November 2012 at the East Arkansas Family Health Center. Beasley reported she had been out of thyroid medicine, had been walking for exercise, and had lost 22 pounds. She was diagnosed with hypothyroidism, dyspnea, anemia, dysuria, and morbid obesity. She was sent to the emergency room where she was diagnosed with anemia. (Tr. 360-364, 389-391).

When seen for a checkup at the Great River Charitable Clinic in February 2013, she weighed 365 pounds and reported she had an enlarged heart, agoraphobia and panic attacks. (Tr. 419-420).

A consultative mental evaluation was performed by Dr. Samuel Hester ("Hester") in February 2013. Hester specifically found Beasley did not fall in the borderline intelligence range.

Further, he diagnosed her with pain disorder, morbid obesity, hypothyroidism, and an enlarged heart. He rated her current GAF at 52, with the highest GAF in the past year of 53. With regard to the effects of her mental impairments, Hester concluded the following: Beasley could drive unfamiliar routes, perform most activities of daily living autonomously, was capable of communicating and interacting in a socially adequate manner, was capable of communicating in an intelligible and effective manner, could cope with the mental demands of basic work tasks, was able to attend and sustain concentration on basic tasks, was able to sustain persistence in completing tasks, and could complete work tasks within an acceptable timeframe as long as the tasks did not exacerbate her pain issues. (Tr. 423-430).

One year after Hester's evaluation Beasley was seen at the East Arkansas Family Health Center, reporting back pain and that she had been out of thyroid medication for a year. She was prescribed Zocor and levothyroxine for hypothyroidism and an additional medication for back pain. (Tr. 439-440).

Seven months later, Beasley was seen as a new patient by Dr. Stephanie Rust ("Rust") at the UAMS Family Medical Center in Pine Bluff. Beasley reported she was exercising, and Rust encouraged her to walk 30 minutes daily "fast enough to get sweaty and feel her heart rate go up." (Tr. 468). Rust diagnosed hypothyroidism, irregular menstrual cycle, chronic low back pain, and anemia, stressing the need to take medicine as prescribed and to continue exercising and eating well. (Tr. 472).

Beasley returned to Rust one month later, in September 2014, complaining of chest pain, shortness of breath, and dizziness. Rust diagnosed her with anemia, irregular menstrual cycle, and morbid obesity. (Tr. 465-467).

The ALJ issued his decision on November 6, 2014.

**Failure to adequately develop the record regarding Beasley's intellectual functioning:** Beasley contends the ALJ should have expanded the record and further explored her intellectual functioning because "three mental health professionals, including Dr. Hester . . . believed that Beasley had borderline intellectual functioning or that it at least needed to be ruled out." Plaintiff's brief, page 18. The record shows that psychiatrist Hair indicated such a diagnosis had to be ruled out, a social worker estimated Beasley had borderline intellectual functioning, and Hester indicated she likely did *not* fall in the borderline intellectual range. (Tr. 348, 356, 427). Thus, the record does not support the argument advanced by Beasley.

While the parties agree that the ALJ has a duty to fully and fairly develop the record, even when the plaintiff, like Beasley, is represented by counsel at both the hearing and in this lawsuit, we find no error in this instance. At the administrative hearing, Beasley's primary assertion was that she was disabled due to her inability to sit or stand for more than a few minutes. She also briefly mentioned an issue which could be construed as a learning disability ("Sometimes I read, but I can't comprehend so. . ." (Tr. 70)). In his decision, the ALJ found there "is no medical evidence or diagnostic testing to support a diagnosis of a learning disability." (Tr. 45). We find neither the testimony of comprehension issues nor the medical entries mentioning borderline intellectual functioning triggered an obligation on the ALJ to seek further evidence. The objective medical evidence in this case, including both a physical and mental consultative examination, was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Under these circumstances, we find no error in the ALJ's reliance upon the record

before him, and on his decision not to seek further evidence on the issue of intellectual functioning. There is no merit to Beasley's first claim for relief.

**Error in determining Beasley's residual functional capacity ("RFC"):** Initially, we note that the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ found Beasley capable of performing sedentary work with the numerous limitations already recited herein. The physical limitations correspond to the objective medical evidence of Beasley's morbid obesity. The mental limitations account for her education level and depression/anxiety. In reaching the RFC determination, the ALJ examined Beasley's medical records in detail. In particular, the ALJ cited the medical evidence showing normal range of motion and Beasley's repeated occasions of non-compliance in taking her thyroid medication. The ALJ relied more heavily on the medical findings of physicians who actually examined Beasley, and assigned "little weight" to the non-examining state agency physicians. (Tr. 51). The record supports this approach. Coupled with the discounted credibility[1], the ALJ reached his RFC conclusion. We find substantial evidence supports the ALJ's RFC findings.

**Inadequate hypothetical questions:** Beasley faults the ALJ for failing to explicitly include

---

[1] The ALJ's discounted Beasley's credibility, noting objective medical evidence and observing her long history of non-compliance and the situational nature of her depression. We also find persuasive the 2014 encouragement from treating physician Rust to continue a daily exercise regimen. (Tr. 468). Rust's advice to Beasley suggests an ability to perform at a greater level than that described by Beasley at the administrative hearing.

morbid obesity and borderline intellectual functioning in the hypothetical questions posed to the vocational expert. There is no merit to this claim. We have already considered the assertions regarding borderline intellectual functioning, and we have already indicated that the hypothetical questions contained limitations tied to both obesity and mental limitations. These limitations accurately reflected the very limited RFC found by the ALJ.

In summary, we find the ultimate decision of Colvin was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Colvin is affirmed and Beasley's complaint is dismissed with prejudice.

IT IS SO ORDERED this 22nd day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE